## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PASCAL GROM | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) Case:  13-2092-KHV-DJW |
| WAL-MART STORES, INC., WAL-MART | ) |
| EAST, LP, WAL-MART ASSOCIATES, INC., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW, Plaintiff Pascal Grom and, by and through undersigned counsel, files the following Complaint against Defendants:

## I.
## PARTIES.

1.     Mr. Grom is a resident of Leavenworth County, Kansas.

2.     Defendants Wal-Mart Stores, Inc., Wal-Mart East, LP, and Wal-Mart Associates, Inc., are each registered to do business in the state of Kansas.

3.     On information and belief, Wal-Mart Stores, Inc, Wal-Mart East, LP and Wal-Mart Associates, Inc. (hereinafter jointly referred to as Wal-Mart or Defendants) are an integrated enterprise and/or joint-employer that operated the Wal-Mart Neighborhood Market Store located in Overland Park, Johnson County at which Mr. Grom was employed.

4.   During calendar year 2011, for each working day during each of 20 or more calendar weeks, Wal-Mart employed 50 or more employees within a 75-mile radius of Mr. Grom's location of employment.

## II.
## JURISDICTION AND VENUE.

5.   The jurisdiction of the Federal Court is invoked because Mr. Grom's claims arise under the statutes and laws of the United States, namely the American's with Disabilities Act ("ADA"), and the Family Medical Leave Act ("FMLA") pursuant to 28 U.S.C. § 1331.

6.   Venue is proper in that Defendants are located within this District and the acts complained of took place within this District.

## III.
## FACTS.

7.   Mr. Grom began his employment with Wal-Mart Neighborhood Market, 10330 Metcalf, Overland Park, Kansas on April 21, 2010 as an overnight stocker.

8.   Between April 21, 2010 and April 21, 2011, Mr. Grom worked at least 1,250 hours.

9.   At all relevant times, Mr. Grom was meeting all the legitimate expectations of his job.

10.   In approximately March 2011, Mr. Grom's first child was born to his then-fiancé Sarah Wright.

11.     Ms. Wright suffers from Grand Mal seizures, and has suffered from such seizures since she was a child.

12.     The seizures suffered by Ms. Wright would temporarily cause her to be incapacitated and render her unable to provide proper care for herself or Mr. Grom's child.

13.     The seizures suffered by Ms. Wright are a disability as defined by the Americans with Disabilities Act (ADA) in that the impairment substantially limits one or more major life activity, including her ability to properly care for herself or Mr. Grom's child.

14.     Consequently, Mr. Grom would periodically miss work to care for his child and Ms. Wright during an episode of the seizures suffered by Ms. Wright.

15.     On June 13, 2011, Mr. Grom applied for FMLA leave to cover his absences to care for his child (and Ms. Wright) when Ms. Wright suffered seizures.

16.     Mr. Grom and Ms. Wright married on or about June 27, 2011.

17.     On or about June 30, 2011, Mr. Grom submitted additional FMLA paperwork to Wal-Mart in light of his marriage to Ms. Wright.

18.     The FMLA paperwork submitted indicated Mr. Grom "may need to miss work to care for patient and child" one time per two weeks for one or two days because Ms. Wright "needs someone to ensure safety of [Ms. Wright] and child and to care for child."

19. On July 14, 2011, Mr. Grom received a "Notice of Eligibility and Rights & Responsibilities" from Wal-Mart Human Resources employee Kim Loftus that notified him that he was eligible for FMLA leave as of June 13, 2011.

20. The July 14, 2011 form gave no further direction to Mr. Grom as to additional information needed by Wal-Mart nor action that was required of him.

21. Wal-Mart's records reflect that Mr. Grom had received FMLA approved absences intermittently into September 2011.

22. Following FMLA approval through the end of his employment, other than his own approved medical leave from August 15, 2011 to August 24, 2011, Mr. Grom missed work shifts only during incidents related to his wife suffering episodes of seizures.

23. Following FMLA approval through the end of his employment, when Mr. Grom took any absences, he informed management, or management was otherwise made aware that Mr. Grom's absences were for FMLA qualifying reasons.

24. But on September 23, 2011, Mr. Grom was terminated by Wal-Mart for "Excessive Absences and/or tardies".

25. The Exit Interview form indicated "Pascal has had 2 absences, 9/17/11 and 9/18/11 since his loa ran out on 9/13/11.  This puts his attendance at 8 unapproved absences. This is unacceptable and does not follow Wal-Mart policy".

26. The dates noted on Mr. Grom's exit interview form as constituting unapproved absences were days which he was otherwise entitled to protected FMLA

leave (i.e. they were days on which Mr. Grom needed to care for his wife and/or child due to Ms. Wright's seizures).

27.     Due to Mr. Grom's association with Ms. Wright, a disabled individual, Wal-Mart terminated his employment.

28.     Defendants applied Wal-Mart's policies in a discriminatory manner in that they held Mr. Grom accountable for absences that were otherwise excused per the FMLA.

## IV.
## VIOLATION OF FMLA AGAINST DEFENDANTS.

29.     Mr. Grom hereby incorporates the foregoing paragraphs 1 through 28 by reference.

30.     The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right pursuant to the FMLA.

31.     Defendants are employers within the meaning of the FMLA.

32.     Mr. Grom was entitled to FMLA leave.

33.     Defendants interfered with, restrained, and denied Mr. Grom's exercise, and attempted exercise of rights pursuant to the FMLA by terminating his employment.

34.     Defendants retaliated against Mr. Grom for his exercise and attempted exercise of FMLA rights by terminating his employment.

35.     Mr. Grom is entitled to all damages authorized by 29 U.S.C. § 2617, including lost wages and benefits, interest, liquidated damages, attorneys' fees, and equitable relief.

## V.
## ADA DISCRIMINATION CLAIM AGAINST DEFENDANTS.

36.     Mr. Grom hereby incorporates the foregoing paragraphs 1 through 35 by reference.

37.     Mr. Grom was associated with another individual suffering from a disability and/or a perceived disability in the form of Grand Mal seizures.

38.     Defendant knew of Mr. Grom's association with another who suffered from a disability/perceived disability under the ADA.

39.     Defendant terminated Mr. Grom for absenteeism rather than provide him with job protected FMLA leave, which he was otherwise entitled to receive.

40.     Mr. Grom filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within the appropriate time period and filed a complaint within 90 days after the date of receipt of a right to sue letter.

41.     As such, this action is timely and Plaintiff has exhausted all administrative prerequisites to filing this action.

42.     As a direct and proximate result of Defendants' conduct, Mr. Grom has sustained and will continue in the future to sustain damages in the form of lost income, emotional pain, suffering, mental anguish, inconvenience, and loss of enjoyment of life.

43.    Mr. Grom is entitled to economic damages, emotional distress, pre and post-judgment interest, attorneys' fees and any other relief the Court deems just and equitable.

## VII.
## REQUEST FOR JURY TRIAL.

Mr. Grom requests a jury trial on all claims asserted herein.

## VIII.
## PLACE OF TRIAL.

Mr. Grom designates Kansas City, Kansas as the place of trial.


Respectfully submitted,

**REAVEY LAW LLC**


By:   /s/  Patrick G. Reavey              .
          Patrick G. Reavey      KS # 17291
          Kevin Koc  KS #24953
          Kansas Livestock Exchange Bldg.
          1600 Genessee, Suite 303
          Kansas City, MO  64102
          (816) 474-6300
          Fax:  (816) 474-6302

          ATTORNEYS FOR PLAINTIFF